UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

GLADYS YOLANDA MILLAN BERROCAL,

Petitioner,

v.

MARKWAYNE MULLIN; TODD BLANCHE; CHRISTOPHER LaROSE; DANIEL BRIGHTMAN; and U.S. DEPARTMENT OF HOMELAND SECURITY,

Respondents.

Case No.: 26-cv-5391-JES-GC

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**

**[ECF No. 1]**

Before the Court is Petitioner Gladys Yolanda Millan Berrocal's ("Petitioner") Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. ECF No. 1. Pursuant to the Court's order to show cause (ECF No. 2), Respondents filed a return to the petition and Petitioner filed a traverse. ECF Nos. 4, 5. For the reasons set forth below, the Court **GRANTS** the petition.

## I. BACKGROUND

Petitioner, a native of Venezuela, originally entered the United States on February 10, 2023, on a visitor's visa. ECF No. 1 ¶ 14. Subsequently, in August 2023, she filed an affirmative asylum application with United States Citizenship and Immigration Services

("USCIS"). *Id.* She attended her first biometrics appointment for her asylum application in October 2023. *Id.* On February 7, 2024, she also applied for an employment authorization document ("EAD"), which was granted and remains valid through February 2029. *Id.* ¶ 15.

Since her entry, Petitioner has continuously lived in the United States. *Id.* She works for Amazon as an assistant manager. *Id.* ¶ 16. She alleges that for the last four years, she has worked to build a life for herself in the United States, including filing taxes, making car payments on her car, and residing with her boyfriend, who is a United States citizen, in Vallejo, California. *Id.* She additionally alleges that she has never been arrested for any criminal offense. *Id.* During her tenure in the United States, she states that she has traveled by air within the United States approximately a dozen times and was never approached by any government officials at any airports. *Id.* ¶ 17.

On September 3, 2026, while awaiting a flight, Petitioner was arrested and detained at the San Diego International Airport. *Id.* ¶ 18. Petitioner alleges that she was told that she was being arrested for having an expired visa, but was not served with a warrant or any other documentation. *Id.* ¶ 19. After she was detained, on that same day, she was served with a Notice to Appear ("NTA") dated that same day, and was taken to Otay Mesa Detention Center, where she is currently being held. *Id.*

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview

of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## III. DISCUSSION

In her petition, Petitioner argues that her detention and the manner under which it was carried out violates the Due Process Clause of the Fifth Amendment, under substantive and procedural due process, as well as a violation of 8 C.F.R. § 236.1(b)(1), and requests release from custody. ECF No. 1 ¶¶ 26-45. In their return, Respondents submit an abbreviated response, stating that Petitioner is entitled to a bond hearing before an immigration judge under 8 U.S.C. § 1226 and "defers to the Court on the appropriate relief." ECF No. 4 at 2.

### A. Due Process

"The Due Process Clause of the Fifth Amendment prohibits the Government from depriving individuals of their life, liberty, or property, without due process of law." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 679. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* at 690.

A person at risk of suffering a serious loss being given notice and an opportunity to be heard, in a meaningful manner and at a meaningful time, is the essence of procedural due process. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Under *Mathews*, courts consider a three-part test to determine whether procedures utilized by the government violates due process: (1) "the private interest that will be affected by the official action;" (2) the "risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

Many district courts within the Ninth Circuit have applied the *Mathews* test in similar factual scenarios to find a due process violation. As a threshold question, the court must first determine whether Petitioner has a protectable liberty interest that is cognizable under due process and concludes that she does. Many courts have found a liberty interest where a petitioner was not granted some form of affirmative parole by the government, but made her presence known to the government and the government then makes a decision *not* to detain her. *See Kharitonova v. Albarran*, No. 3:26-CV-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026) (finding liberty interest from "government's decision not to detain Petitioner 'when it processed her asylum application, took her biometrics, referred her asylum case to EOIR, and advised her to appear for multiple hearings over a period of years'"); *Zhou v. Janec[k]a, et al.*, No. 5:26-CV-04167-DTB, 2026 WL 2365550, at *5 (C.D. Cal. Aug. 14, 2026) ("Courts have found a substantial liberty interest in circumstances where noncitizens commenced immigration proceedings, and the government chose not to detain them."); *Gagik T. v. Chestnut*, No. 1:26-CV-04337-MWJS, 2026 WL 1837413, at *3 (E.D. Cal. June 25, 2026) ("Judges of this district and others have repeatedly held, on facts materially similar to these, that a noncitizen who has lived at liberty for years while his immigration case proceeds—pursuant to the Government's affirmative decision not to detain him—holds a protected liberty interest in remaining free from custody, and may not be detained without pre-deprivation process."); *see also Romero Teran v. LaRose*, Case No. 26-cv-4591-RBM-MSB (S.D. Cal. Sept. 21, 2026), ECF No. 6 at 5; *Jemna v. Mullin*, Case No. 26-cv-2396-RBM-VET (S.D. Cal. Sept. 29, 2026), ECF No. 13 at 8-9.

The Court is persuaded by and joins the reasoning of these courts. Here, Petitioner has entered the United States in 2023 and filed her asylum application in August of that year. She subsequently had her biometrics appointment and applied for employment

authorization, which was granted and does not expire until February 2029.[1] Thus, for more than three years, the government has had "meaningful knowledge of Petitioner's immigration status and circumstances," taken affirmative actions in processing Petitioner's asylum application and granting work authorization, and still made the affirmative choice to not detain her—these factors "vested in Petitioner a liberty interest in [her] continued freedom." *James Orlando H.C. v. Chestnut*, No. 1:26-CV-03823-MWJS, 2026 WL 1917113, at *4 (E.D. Cal. July 3, 2026) (cleaned up).

Having found a protectable liberty interest under due process, the Court also concludes that the *Mathews* factors all support a finding that the government violated Petitioner's due process rights when it detained her in September 2026 without any notice or opportunity to be heard. As to the first factor, courts have routinely found that noncitizens have a significant liberty interest in remaining free from detention where they were permitted to reside free in the United States for a number of years. *Kharitonova*, 2026 WL 531441, at *3; *Zhou*, 2026 WL 2365550, at *5 (finding significant liberty interest in "remaining in the community with her husband and pursuing her applications for immigration relief"); *Gagik*, 2026 WL 1837413, at *4 ("[Petitioner's] interest in freedom from physical detention is weighty.").

As to the second factor, the crux of due process "is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (citation omitted). Thus, this factor also weighs in favor of Petitioner, where the risk of deprivation is high compared without a pre-deprivation process. *Gagik*, 2026 WL 1837413, at *4 ("The risk of erroneous deprivation from seizing a long-present, work-authorized asylum applicant with no criminal history, without any prior opportunity to be heard, is substantial,

---

[1] The fact that Petitioner's visa expired before she filed her affirmative asylum application is inapposite. In *James Orlando H.C.*, the court found that the express grant of work authorization was a sufficient grant of approval to remain in the United States. 2026 WL 1917113, at *4 ("Although his initial permission to enter the United States expired, the government chose to grant him employment authorization, which remains valid through 2029.").

and the value of a pre-deprivation hearing in reducing that risk is correspondingly high.”). This is especially true where as here, Petitioner has not yet received any bond or custody determination hearing. *Kharitonova*, 2026 WL 531441, at *3.

Finally, as to the third factor, Respondents have not asserted any legitimate interest in detaining Petitioner without a pre-detention hearing. *See generally* ECF No. 4. “In immigration court, custody hearings are routine and impose a minimal cost.” *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025) (cleaned up). Indeed, courts have recognized that “[i]f the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.” *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Kharitonova*, 2026 WL 531441, at *3; *Zhou*, 2026 WL 2365550, at *6.

Thus, the Court finds that Petitioner’s detention without notice or a pre-deprivation hearing violates due process and renders his detention unconstitutional.

## IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Petitioner’s writ of habeas corpus. Because the Court grants the petition on the procedural due process ground, Respondents are **ORDERED** to **immediately** release Petitioner from custody. The Court declines at this time to address the other grounds raised in the petition. The Parties are **ORDERED** to file a Joint Status Report by **October 13, 2026**, confirming that Petitioner has been released.

The Clerk of Court is **ORDERED** to **CLOSE** this case.

**IT IS SO ORDERED.**

Dated: October 7, 2026

Honorable James E. Simmons Jr.
United States District Judge